**John and Susan HAAS, H/W, Appellants**

v.

**FOUR SEASONS CAMPGROUND, INC., Appellee.**

Superior Court of Pennsylvania.

Argued May 14, 2008.
Filed June 26, 2008.

David B. Rodden, Philadelphia, for appellants.

Marc H. Myers, Philadelphia, for appellee.

BEFORE: BOWES, GANTMAN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 John and Susan Haas appeal from the September 14, 2007, Order dismissing their complaint and sustaining Four Seasons Campground's preliminary objections. The following facts relevant to our disposition and adduced by the trial court are as follows.

¶ 2 Four Seasons Campground, incorporated in New Jersey, rents campground spaces to recreational vehicle owners and persons who opt to rent cabin space. Appellants, residents of Pennsylvania, viewed appellee's website, www.fourseasons camping.com, and decided they wanted to lease campground space. Appellee's website, however, did not allow seasonal contract purchases to be made on-line. Appellants, therefore, drove to New Jersey, where appellee is located, and signed a seasonal contract whereby they would

spend several months during the year at the campsite.

On or about October 16, 2006, [appellant] John Haas and his family rented a campsite at the Four Seasons Camp Ground, in Pilesgrove, New Jersey. A branch fell from a tree on the camp site, striking John Haas in the head, and causing him to fall into a brick fireplace and then to the ground. This case arises from that incident.

Following the filing of [appellants'] complaint, [appellee] Four Seasons filed preliminary objections alleging a lack of jurisdiction over the New Jersey campground. On June 27, 2007 [the trial court] ordered the parties to conduct discovery on the issue of jurisdiction and file supplemental memoranda. On July 12, 2007 [the trial court] granted an extension of the time for discovery and supplemental memoranda. On August 17, 2007 a discovery motion filed by [appellants] was listed for a hearing, but the motion was dismissed as moot, upon agreement of the parties.

On September 12, 2007, [the trial court] entered an order dismissing the complaint for lack of jurisdiction over [appellee] Four Seasons, without prejudice to file in New Jersey. This appeal followed.

Trial Court Opinion, Manfredi, J., 12/27/07, at 1–2. Appellants' sole issue on appeal is as follows:

Did the trial court commit an error of law by determining, through use of outdated precedent, that appellee has not established sufficient contacts with

Pennsylvania to allow Pennsylvania Courts to exercise jurisdiction?

Appellants' brief at 2.

¶ 3 The scope of review in determining whether a trial court erred in sustaining preliminary objections and dismissing a complaint is plenary. *See Connor v. Archdiocese of Philadelphia,* 933 A.2d 92, 96 (Pa.Super.2007).

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt, and this Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion.

*Rambo v. Greene,* 906 A.2d 1232, 1235 (Pa.Super.2006) (citations omitted). In addition, the burden of proof initially rests upon the party contesting jurisdiction; once that party has provided proof, the burden then shifts to the non-moving party to adduce evidence demonstrating there is a basis for asserting jurisdiction over the moving party. *McCall v. Formu–3 Int'l, Inc.,* 437 Pa.Super. 575, 650 A.2d 903, 904 (1994), *appeal denied* 541 Pa. 640, 663 A.2d 692 (1995).

¶ 4 Appellants contend appellee is subject to both specific jurisdiction and general jurisdiction under Pennsylvania's Long–Arm Statute, 42 Pa.C.S.A. § 5301(a)(2)(iii),[1] **Persons, (a) General**

---

1. The statute provides in relevant part:
    (a) **General rule.**—The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to

    enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal

rule, (2) Corporations; 42 Pa.C.S.A. § 5322(a)(1)[2], **Bases of personal jurisdiction over persons outside this Commonwealth, (a) General rule,** Transacting any business in this Commonwealth. Appellants' brief at 4–5; *see also* Trial Court Opinion at 2. Appellants further contend that appellee has availed itself of Pennsylvania jurisdiction because of the existence of appellee's interactive website under 42 Pa.C.S.A. § 5322(a)(1). Appellants' brief at 5.

¶ 5 The Pennsylvania long-arm statute permits the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States," Fourteenth Amendment's Due Process Clause. 42 Pa.C.S.A. § 5322(b), **Bases of personal jurisdiction over persons outside this Commonwealth, (b) Exercise of full constitutional power over nonresidents;** *See Nutrition Management Services Co. v. Hinchcliff,* 926 A.2d 531, 537 (Pa.Super.2007). In order to determine whether appellee has garnered sufficient contacts with the Commonwealth of Pennsylvania such that specific personal jurisdiction could be established, we have to ascertain the "nature and quality of commercial activity that an entity conducts over the Internet." *Efford v. Jockey Club,* 796 A.2d 370, 374 (Pa.Super.2002).

Regardless of whether general or specific *in personam* jurisdiction is asserted, the propriety of such an exercise must be tested against the Pennsylvania long-arm statute and the due process clause of the Fourteenth Amendment. In order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum. Random, fortuitous and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. That is, the defendant must have purposefully

orders against such person or representative:

. . .

(2) Corporations.—

. . .

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

2. The statute provides as follows:

(a) **General rule.**—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(v) The ownership, use or possession of any real property situate[d] within this Commonwealth.

directed its activities to the forum and conducted itself in a manner indicating that it has availed itself to the forum's privileges and benefits such that it should also be subjected to the forum state's laws and regulations.

*Id.* at 373 (citations omitted), *quoting General Motors Acceptance Corp. v. Keller,* 737 A.2d 279, 281 (Pa.Super.1999). In other words, the inquiry distills to whether the defendant has availed itself of the minimum contacts necessary to vest the Commonwealth with jurisdiction such that it comports with fair play and substantial justice. *See General Motors Acceptance Corp. v. Keller* 737 A.2d 279, 283 (Pa.Super.1999). With regard to specific personal jurisdiction, our focus is narrow in scope; we examine the particular events that gave rise to the underlying claim. *Id.* at 281.

¶ 6 Appellants urge this Court to adopt the sliding scale test, as pronounced in *Efford,* to assess specific jurisdiction. We decline to do so; the facts of this case are not such that the underlying cause of action arose from appellants' use of appellee's website. Appellants' arguments premised on *Efford* are more specifically aimed to a general jurisdiction attack.

*Specific jurisdiction*

¶ 7 Generally our specific jurisdiction inquiry focuses on the party's course of dealing and the known benefits incurred by contracting with a party from the forum state. *See, e.g., Keller* at 282, (holding that a party contracting with a resident of Pennsylvania despite not physically signing the contract in Pennsylvania, was sufficient to determine purposeful availment and vest Pennsylvania with jurisdiction given that the party mailed the contract to Pennsylvania, directed payments to Pennsylvania, and conducted business with the same Pennsylvania company repeatedly).

¶ 8 Here, appellee's web site and brochures are not sufficient to subject it to specific jurisdiction in Pennsylvania. Appellants claim they found appellee's campgrounds as a result of an internet search. The mere presence of a website without more, however, is not sufficient to subject a business to specific jurisdiction. The internet website must target users of the forum state, and the use of the internet website must engage the party in such a way that the underlying transaction that gives rise to the claim occurs as a result of using the website.

¶ 9 Appellee's seasonal contracts were not available for transmission via personal computer to appellee's business in New Jersey. Appellee's website, therefore, was merely passive in that respect, as a customer could not purchase the rights to reside on the campsite seasonally through the website. Appellants drove into the state of New Jersey to sign the seasonal contract for the camping site. The accident happened in New Jersey, on the campgrounds appellants occupied, under the contract signed in New Jersey. In addition, the continuous nature of the business relationship between appellants and appellee occurred as a direct result of appellants renewing their seasonal contract in New Jersey, not in the forum state. Accordingly, it cannot be said that appellee purposely availed itself to the Commonwealth such that it was put on notice that it would have to defend itself in the forum.

¶ 10 Moreover, the cases on which appellants rely to support their claim that specific jurisdiction lies are inapposite to the current case, as those cases analyzed the propriety of subjecting a foreign company with websites featuring its services to *general jurisdiction* based on the interactiveness of the website. The other forms of communication appellants posit for our re-

view, which would subject appellee to jurisdiction in our state courts, namely that customers can reserve campgrounds on the website and that a significant amount of reservations are made through appellee's website, is more appropriately suited to an inquiry of general jurisdiction, as these facts do not give rise to the underlying claim. We will address these claims below.

*General Jurisdiction*

¶ 11 Appellants next contend the fact that appellee maintains a website noting its close proximity to Philadelphia; disseminates newsletters and brochures to Pennsylvania residents by mail; purchases products from Pennsylvania vendors; makes a significant volume of direct sales to Pennsylvania residents; and publishes a toll-free number fulfills the minimum contacts necessary to vest Pennsylvania with general jurisdiction. *See* appellants' brief at 8; *See* appellants' *EXHIBIT D, E.*

¶ 12 Appellee responds that its contacts with Pennsylvania and appellants are too tenuous to establish general jurisdiction. *See* Appellee's brief at 13–14. Particularly, appellee maintains its website was incapable of soliciting seasonal contracts to reside on its grounds from appellants because that service is not provided on its website. *Id.* at 12. In support thereof, it references the fact that appellants had to drive to its campground located in New Jersey to sign a seasonal contract. *Id.* at 10. Moreover, appellee contends it has no assets, bank accounts or property in Pennsylvania, no agents or representatives residing or working in Pennsylvania, no phone listing in Pennsylvania, and does not directly target any advertising to Pennsylvania residents. *Id.* at 13.

¶ 13 In *Efford, supra* at 374, we adopted the Third Circuit's sliding-scale test in conducting the minimum contacts inquiry for general personal jurisdiction. According to the sliding-scale test:

The likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id., quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). We reasoned that the sliding scale test comported with our principles of general personal jurisdiction. Moreover, such contacts established through internet communication must be "continuous and systematic" in order to vest Pennsylvania courts with jurisdiction. *See Taylor v. Fedra Int'l, Ltd.,* 828 A.2d 378, 381 (Pa.Super.2003).

¶ 14 A review of appellee's website leads to the conclusion that it occupies the

middle ground of the spectrum; that is to say that it is minimally interactive. There is a reservation request form that solicits credit card and other personal information to reserve a campsite for a specific arrival and departure time that then transmits that information to appellee, similar to that of a hotel company's website that allows a guest to book a room online. What is glaringly missing, however, is any evidence in the record of how many registrations took place on-line, and the amount, if any, that were made by Pennsylvania residents. *See Frank v. Frank*, 402 Pa.Super. 458, 587 A.2d 340, 342 n. 5 (1991) (finding that what is not in the certified record ceases to exist); *see also Efford, supra* at 376 (reasoning that appellant's failure to produce evidence of the amount of Pennsylvania born foals registered via appellee's internet website, *inter alia,* precluded a finding of general jurisdiction). Nonetheless, the existence of the reservation request form constitutes an interactive website causing us to evaluate the "nature and quality of commercial activity that an entity conducts over the Internet." *Efford, supra* at 374. We must determine, "(a) whether the websites are targeted specifically to Pennsylvanians; and (b) whether the websites are central to the defendants' business in Pennsylvania." *McCague v. Trilogy Corp.,* 2007 WL 839921, *3 (E.D.Pa.2007) (slip copy).[3]

¶ 15 The nature of the internet has changed tremendously in recent years. The internet is global in reach and allows businesses to connect with users in a different capacity than ever before. Millions of viewers' initial point of contact with a specific business occurs as a result of information displayed on a website. *See* Dennis T. Yokoyama, *YOU CAN'T AL-*

*WAYS USE THE ZIPPO CODE: THE FALLACY OF A UNIFORM THEORY OF INTERNET PERSONAL JURISDICTION,* 54 DePaul L. Rev. 1147, 1156 (2005). Subjecting a party to general personal jurisdiction solely on the basis of a "highly interactive website" without conducting an analysis as to whether information on that particular website is specifically directed at Pennsylvanians, and whether the transaction via the internet represents a significant source of revenue stream would vest Pennsylvania with jurisdiction to nearly every party with a website requesting personal information. Failing to conduct this examination would comport with neither the constitutional protections of the United States constitution nor the statutory protections of our long-arm statute.

¶ 16 In this case, the website makes *de minimis* references to Pennsylvania. For instance, publishing on its website "only 30 miles to Philadelphia" and noting some attractions located in Pennsylvania near the campground does not warrant a finding that appellee directly advertised to Pennsylvania residents. *See* appellants' **EXHIBIT D, E.** These references serve as nothing more than indicators for visitors in ascertaining the location of the campground in relation to known areas.

¶ 17 Appellee's newsletters are advertised in two national publications. There is no evidence in the record that these are directly targeted at Pennsylvania residents. *See* appellants' **EXHIBIT M,** at 12. Additionally, appellee handed out brochures at the campgrounds located in New Jersey. *Id.* at 15. In order for a party to obtain a brochure without stepping into New Jersey, the party needs to initiate contact with appellee by written inquiry.

**3.** Although decisions made by the federal courts are not binding, they are instructive nevertheless. *See Efford, supra* at 374.

*Id.* These forms of communication preclude a finding of systematic and continuous contact. *See Efford, supra* at 375 (holding that absence of evidence that appellee internet company directed advertising towards Pennsylvanians via its website and the initiation by appellant to receive information via mail precluded a finding of general jurisdiction).

¶ 18 Moreover, the owner of Four Seasons merely speculated as to how the reservation form impacts its revenue stream, guessing that approximately between five and ten percent of sales are generated as a result of such use. *See* appellants' **EXHIBIT M,** at 26. There is no affirmative evidence showing what percentage of appellee's internet sales are generated by Pennsylvania residents. Moreover, we reiterate that fact that seasonal campers cannot make reservations through the internet website. Appellants also fail to convince this Court the mere fact that 20 to 30 percent of persons using the campgrounds are Pennsylvania residents demonstrates purposeful availment. Appellants still must provide this Court with some proof that these guests chose to stay at the campgrounds as a result of appellee's targeted contact with the Commonwealth; appellants have not done so. Furthermore, appellants' claim regarding Pennsylvania vendors and the toll-free number are equally unavailing, as this contact is not systematic and continuous.[4]

¶ 19 We emphasize the fact that appellee has neither agents nor representatives in Pennsylvania; is registered to do business only in New Jersey; does not pay Pennsylvania taxes; does not own property in Pennsylvania; does not have any bank accounts or assets in Pennsylvania; and its only business is located in New Jersey. Accordingly, we do not find the contacts sufficient to meet the minimum contacts necessary to vest Pennsylvania courts with jurisdiction.

¶ 20 In conclusion, we would be remiss if we did not examine *Mar–Eco, Inc. v. T & R and Sons Towing and Recovery, Inc.,* 837 A.2d 512 (Pa.Super.2003), wherein we concluded that a company which conducted business through its website had sufficient contacts with the state to be subject to Pennsylvania jurisdiction. In that case, a Maryland company transacted with a Pennsylvania corporation for the purchase and financing of a motor vehicle. *Id.* at 514. The Pennsylvania company filed a lawsuit in Pennsylvania alleging negligence and unjust enrichment against the Maryland company. *Id.* This Court allowed jurisdiction against the Maryland company where appellant's website advertised, "This page allows you to handle nearly all of the financial aspects of a vehicle purchase. We've made shopping for a car much easier for you by allowing you to shop and virtually complete the entire transaction via your computer." *Id.* at 517. Additionally, the website enabled a user to apply for employment, calculate payment schedules, order parts and schedule service appointments, exchange trade-in information and request specific price quotes. It also informed users that their information could be transmitted to a third party recipient for commercial purposes. *Id.* at 517–518. On the basis of the extensive commercial and "highly interactive" nature of the website and the significant portion of business conducted via the internet, the Court concluded that general jurisdiction was proper. *Id.*

---

**4.** Deposition testimony by the owner of Four Seasons Campground shows that the business utilized a candy distributor from Pennsylvania only once a year via UPS. *See* **EXHIBIT M,** at

46. Additionally, the existence of a toll-free number, without more, is too speculative to be probative of purposeful availment.

¶ 21 The case before us is distinguishable in that appellee's website does not allow users to engage in what can only be described as shopping at a virtual retail store. The website only allows users to input information relative to reserving a campground. There is no continuous contact by the host computer in reserving a campground; appellee's website does not purport to be a one-stop shop; and it does not solicit a party's information to later pass on to third-party recipients. The website does not guarantee a reservation upon submission of information on the reservation request form. In fact, the website proclaims, **"Please understand that this is strictly a Reservation Request Form. You do not have an actual reservation until it has been confirmed, and a reservation cannot be confirmed until your deposit has been processed and authorized."** Appellants' **EXHIBIT D.** The website in this case cannot be a basis for subjecting appellee to general jurisdiction, as the website is neither "highly interactive" nor is there any evidence that a significant source of income is generated by the website. Moreover, *Mar–Eco* was decided in 2003, a much different time than today when virtually every business has some sort of mechanism whereby a party can input information and the proliferation of such tools were not as obvious. *See* Yokoyama, *supra* at 1167.

¶ 22 In conclusion, we emphasize when a website is found to be neither passive nor engaged in knowing and continual transmission of computer files and occupies the middle ground of the sliding-scale, a court must examine the commercial nature of the website, specifically focusing on the extent of business conducted with Pennsylvania residents via the host website and whether the website comprises a significant portion of revenue by the party objecting to jurisdiction. While this inquiry might yield somewhat incongruous results given the various emphases placed on the commercial nature of the website and the interactiveness, this analysis is necessary to comport with the Due Process Clause of the Fourteenth Amendment. More importantly, *if not conducted, courts run the risk of running afoul of our constitutional protections.*

¶ 23 Order affirmed.