Kim **SULKAVA**, as Administratrix of the Estate of Jarmo Sulkava, and in Her Own Right, Appellant

v.

**GLASTON FINLAND OY; Glaston USA, Inc.; Glaston America, Inc.; Glaston North America, Inc.; Uniglass Engineering OY; Menotie 4; And Rochester Insulated Glass, Appellees.**

Superior Court of Pennsylvania.

Submitted April 30, 2012.
Filed Sept. 28, 2012.

886

David L. Kwas, Philadelphia, for appellant.

Robert J. Marino, Pittsburgh, for Glaston America, Glaston Finland, Glaston USA, Menotie 4 and Uniglass, appellees.

Miles A. Kirshner, Pittsburgh, for Rochester, appellee.

BEFORE: FORD ELLIOTT, P.J.E., MUSMANNO and PLATT *, JJ.

OPINION BY MUSMANNO, J.:

In these consolidated appeals, Kim Sulkava ("Sulkava"), as Administratrix of the Estate of her late husband, Jarmo Sulkava ("the decedent"), and in her own right, appeals from two separate Orders, one of which granted the Preliminary Objections ("PO's") filed by Rochester Insulated Glass ("RIG"), and the other Order granted the PO's filed by Uniglass Engineering Oy ("Uniglass") and Glaston Finland Oy (collectively "the Glaston Finnish entities"), Glaston USA, Inc., Glaston America, Inc., and Glaston North America, Inc. (collectively "the Glaston American entities"), and Menotie 4.[1] Additionally, the Glaston

---

* Retired Senior Judge assigned to the Superior Court.

1. For clarity, we will collectively refer to RIG, the Glaston Finnish entities, and the Glaston American entities as "the Appellees." We will collectively refer to the Glaston American entities and the Glaston Finnish entities as "the Glaston appellees." Further, although

appellees have filed a Motion to quash Sulkava's appeal. We reverse and deny the Motion to quash.

The trial court set forth the facts underlying this appeal as follows:

> This action was brought pursuant to Pennsylvania's Wrongful Death and Survival Act as the result of the death of [the decedent] on April 2, 2008. The decedent was killed while working on business premises owned by [RIG located] in Manchester, New York[.] The [decedent] was helping to commission two new [glass] tempering furnaces when he cam[e] into contact with energized bus bars, experienced electric shock injuries[,] and died at the worksite in Manchester, New York. [In August 2010, Sulkava filed suit] in Allegheny County, Pennsylvania,[2] against [ (1) ] Glaston Finland [Oy], a corporation existing under the laws of Finland[; (2) ] Glaston USA[, Inc.], a corporation existing under the laws of Pennsylvania with a principal place of business in New Jersey and with a registered agent in Pittsburgh, Pennsylvania[; (3) ] Glaston North America[, Inc.], a corporation organized under the laws of either Pennsylvania or North Carolina, maintaining a principal place of business in North Carolina with a registered agent in Pittsburgh, Pennsylvania[; (4) Glaston America, Inc., a corporation existing under the laws of Pennsylvania with a principal place of business in New Jersey and with a registered agent in Pittsburgh, Pennsylvania; (5) ] Uniglass, a corporation existing [under] the laws of Finland[; and (6) RIG], a New York corporation with no office or registered agent within the Commonwealth of Pennsylvania.

> [Prior to the decedent's death,] Uniglass had entered into an agreement with [RIG to supply and install the tempering furnaces at issue at RIG's facility in Manchester, New York.[3]] This contract was not negotiated, signed or entered into in Allegheny County or in the Commonwealth of Pennsylvania. None of the Glaston [appellees] performed any acts in Pennsylvania or in Allegheny County relative to the claims brought by the [E]state of [the decedent]. None of the Glaston [appellees] performed any actions or engaged in any conduct pertaining to the contract with RIG or manufactured, sold, and/or serviced any equipment being worked on [by the decedent] at the time of his accident in New York.

Trial Court Opinion, 12/16/11, at 1–2 (unnumbered, footnotes added).

 In response to Sulkava's Complaint, RIG and the Glaston appellees filed separate PO's asserting that the trial court lacked personal jurisdiction over all of the defendants and that Allegheny County is an improper venue. Following discovery that was limited to the issues of personal jurisdiction and venue, the trial court entered two separate Orders on August 23, 2011. One of the Orders granted RIG's PO's and dismissed Sulkava's Complaint against RIG, and the other Order granted the Glaston appellees' PO's and dismissed Sulkava's Complaint against those entities. On September 20, 2011, Sulkava timely filed a *single* Notice of appeal regarding

---

the caption lists "Menotie 4" as a party, it appears from the record that Menotie 4 is not among the Appellees.

2. The record reflects that the decedent resided in Allegheny County with Sulkava and their two children.

3. At the time of the accident, the decedent was employed as an agent of Uniglass.

both of the August 23, 2011 Orders. In response to Sulkava's Notice of appeal, this Court sent a letter to Sulkava's counsel stating as follows:

> Pursuant to the note to Pa.R.A.P. 512, only one order per appeal is permissible in [the] Superior Court. If counsel wishes to appeal more than one order, he must file a separate appeal for each order. When counsel amends his appeal to reflect the one order being appealed, or files an additional appeal, kindly return this appeal—or the appeals—to our office.

Superior Court Correspondence, 9/26/11. Ten days later, Sulkava's counsel filed an Amended Notice of appeal from the Order granting RIG's PO's, and a separate Amended Notice of appeal from the Order granting the Glaston appellees' PO's.

Subsequently, the Glaston appellees filed a Motion to quash with this Court. According to the Glaston appellees, Sulkava failed to preserve her appeal against them because her initial Notice of appeal was improperly taken from two separate Orders, and Sulkava had filed her Amended Notices of appeal after the expiration of the thirty-day appeals period set forth in Pa.R.A.P. 903. The Motion to quash is presently before this panel for consideration, which we will address prior to considering Sulkava's issues on appeal.

As a general rule, "[t]aking one appeal from separate judgments is not acceptable practice and is discouraged." *Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.*, 437 Pa. 463, 263 A.2d 448, 452 (1970); *see also* Pa.R.A.P. 512, Note (same). In *TCPF, L.P. v. Skatell*, 976 A.2d 571 (Pa.Super.2009), this Court was presented with the same procedural defect involved in the instant appeal, *i.e.*, the appellant's filing of a single notice of appeal from two separate trial court orders and the subsequent filing of an untimely amended notice of appeal. The *Skatell* Court denied the appellee's motion to quash the appeal, holding that "where . . . Appellant filed a timely, albeit discouraged, appeal of multiple orders and filed a subsequent amended appeal, no fatal defect exists and the mandates of judicial economy require that the appeal be heard." *Id.* at 574 n. 4.

Here, in response to Sulkava's initial, timely Notice of appeal, this Court sent a letter to Sulkava's counsel granting him permission to amend the appeal to remedy the procedural defect. Sulkava's counsel filed two Amended Notices of appeal soon after receiving this Court's letter. However, the amended appeals were filed forty-four days after the entry of the Orders appealed from. Nevertheless, like the Court in *Skatell*, we find that "no fatal defect exists and the mandates of judicial economy require that the appeal be heard." *Id.* Accordingly, we deny the Glaston appellees' Motion to quash.

On appeal, Sulkava raises the following issues for our review:

1. Whether, under the Pennsylvania Long–Arm Statute and Pennsylvania case law, [RIG] is subject to general personal jurisdiction where it continuously, regularly, and systematically furthers its corporate objects within Pennsylvania and purposefully avails itself of the laws and benefits of conducting business in this Commonwealth?

2. Whether, under the Pennsylvania Long–Arm Statute and Pennsylvania case law, [the Glaston appellees] are subject to general personal jurisdiction where the entities continuously, regularly, and systematically further their corporate objects within Pennsylvania and purposefully avail[ ] themselves of the laws and

benefits of conducting business in this Commonwealth?

3. Whether, under the Pennsylvania Rules of Civil Procedure and Pennsylvania case law, [the Glaston appellees] are subject to venue in Allegheny County[,] wherein they have registered agents and wherein they continuously, regularly, and systematically carry on their core business?

Brief for Appellant at vii.

▇▇▇▇ In addressing Sulkava's issues, we are guided by the following:

The scope of review in determining whether a trial court erred in sustaining preliminary objections and dismissing a complaint is plenary.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt, and this Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion.

*Haas v. Four Seasons Campground, Inc.,* 952 A.2d 688, 691 (Pa.Super.2008) (citations omitted). Moreover,

when deciding a motion to dismiss for lack of personal jurisdiction[,] the court must consider the evidence in the light most favorable to the non-moving party. This Court will reverse the trial court's

decision regarding preliminary objections only where there has been an error of law or an abuse of discretion. Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it.

*Schiavone v. Aveta,* 41 A.3d 861, 865 (Pa.Super.2012) (citation omitted).

▇▇▇▇ Sulkava argues that the Appellees are subject to general personal jurisdiction[4] under Pennsylvania's Long–Arm Statute, 42 Pa.C.S.A. § 5301, which provides, in relevant part, that Pennsylvania courts may acquire general jurisdiction over a non-resident corporation where it "carr[ies] on [ ] a continuous and systematic part of its general business within this Commonwealth." *Id.* § 5301(a)(2)(iii). Where, as here, "the plaintiff's cause of action does not arise from the defendant foreign corporation's business activities in this state, Pennsylvania courts may exercise *in personam* jurisdiction over the defendant only if the defendant's business activities are so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction." *Slota v. Moorings, Ltd.,* 343 Pa.Super. 96, 494 A.2d 1, 5–6 (1985) (citation and quotation marks omitted). "[T]here is no statutory framework by which courts may determine whether a nonresident corporate defendant has conducted a 'continuous and systematic' part of its business in the Commonwealth. . . ." *Derman v. Wilair Serv's, Inc.,* 404 Pa.Super. 136, 590 A.2d 317, 323 (1991). Instead, in analyzing a defendant's contacts with the forum, an appellate court will look to the aggregate effect of those

4. Sulkava emphasizes that "[t]he issues regarding jurisdiction in this case relate only to general personal jurisdiction and **not** to specific jurisdiction." Brief for Appellant at xxi (emphasis in original). In its Opinion, the

trial court determined, *inter alia,* that it lacked specific jurisdiction over the Appellees. *See* Trial Court Opinion, 12/16/11, at 2 (unnumbered).

contacts as a whole. Finally, this Court has stated that

> in order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum. Random, fortuitous and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of jurisdiction. That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself to the forum's privileges and benefits such that it should also be subjected to the forum state's laws and regulations.

*Moyer v. Teledyne Cont'l Motors, Inc.*, 979 A.2d 336, 349 (Pa.Super.2009) (citation and brackets omitted).

■■■ We will first address Sulkava's contention that general personal jurisdiction exists as to RIG. Initially, the record reflects that RIG (1) is incorporated under the laws of the State of New York; (2) maintains its principal place of business in New York; (3) does not maintain any place of business in Pennsylvania or have a telephone listing in Pennsylvania; (4) did not have any employees at the time of the accident who resided in Pennsylvania; (5) does not advertise in Pennsylvania (other than advertising placed in *Glass and Metal Magazine*, a national publication); (6) has not owned real estate or leased property in Pennsylvania; and (7) has not opened or maintained a bank or investment account in Pennsylvania. Further, the contract between RIG and Uniglass to construct the glass tempering furnaces at RIG's premises in New York was not negotiated, signed, or entered into in Pennsylvania.

In support of her allegation that "RIG's general activities within the Common-

wealth of Pennsylvania are continuous, regular and systematic[,]" Sulkava correctly emphasizes that, between the years 2000 and 2009, approximately 15% of RIG's business was attributable to sales in Pennsylvania, and that RIG generated over $16 million in income from these sales. *See* Brief for Appellant at xi, 7; *see also* Response to Preliminary Objections of [RIG], 6/20/11, Exhibit A. Sulkava further correctly points out that, "[a]s required by Pennsylvania law, RIG has paid corporate income taxes to the Commonwealth of Pennsylvania for each of the years identified . . . ." Brief for Appellant at 8; *see also* Response to Preliminary Objections of [RIG], 6/20/11, Exhibit A. Finally, Sulkava calls attention to RIG's admission during discovery that, during the last ten years, it has purchased glass material from two suppliers that are based in Pennsylvania. *See* Brief for Appellant at xii, 8; *see also* Response to Preliminary Objections of [RIG], 6/20/11, Exhibit B.

To summarize RIG's connections with Pennsylvania, RIG has (1) conducted business in Pennsylvania for at least ten years; (2) generated over $16 million in income from its sales in Pennsylvania between the years 2000 and 2009; (3) paid considerable corporate income taxes to Pennsylvania; and (4) generated approximately 15% of its income, between the years 2000 and 2009, from the sale of its goods in Pennsylvania. In 2008, the year of the decedent's accident, approximately 14% of RIG's annual sales took place in Pennsylvania, and RIG earned well over $2 million from those sales.

Based upon these facts, and particularly the significant percentage of RIG's business conducted in Pennsylvania and the substantial income to RIG from its Pennsylvania sales, we determine that the trial court erred in finding that it lacked general personal jurisdiction over RIG. *Cf. Moy-*

*er*, 979 A.2d at 349 (holding that no general jurisdiction existed over the defendant where, during the relevant time period, sales to Pennsylvania customers by the defendant business comprised *less than* 2% of its total sales); *Derman*, 590 A.2d at 324 (no general jurisdiction over defendant that "does a small portion of its total business—approximately 1.5%—with residents of Pennsylvania") (emphasis added). Since we conclude that RIG carries on "a continuous and systematic part of its general business within this Commonwealth[,]" it is thus subject to general personal jurisdiction under the Long–Arm Statute. 42 Pa.C.S.A. § 5301(a)(2)(iii).

■■■ Sulkava next argues that the trial court erred in finding that it lacked general personal jurisdiction over the Glaston appellees. *See* Brief for Appellant at 9. Sulkava points out that the decedent was employed as an agent for Uniglass, one of the Glaston appellees, at the time of his death, and that, according to the Glaston appellees, Uniglass ceased operations following the decedent's death. *Id.* at 9–10. Although Sulkava disputes the Glaston appellees' contention in this regard, she argues in the alternative that the Glaston appellees are the successors-in-interest of Uniglass and have assumed its assets and liabilities. *Id.* Sulkava contends that the trial court had general personal jurisdiction over the Glaston appellees because the Glaston *American* entities have (1) registered offices in Pittsburgh; (2) employees located in Pennsylvania; (3) generated significant income from the sale of their goods in Pennsylvania; (4) regularly paid corporate income taxes in Pennsylvania; (5) entered into contracts for professional services in Pennsylvania; (6) leased real property and machinery in Pennsylvania; and (7) maintained bank accounts and telephone listings in Pennsylvania. *Id.* at 10–11.

In response, the Glaston appellees assert that "[the decedent] was contracted with Uniglass [ ], [and] that Glaston Finland Oy is the successor in interest to Uniglass...." Brief for the Glaston appellees at 7. According to the Glaston appellees, Glaston Finland Oy is one of the Glaston *Finnish* entities, which entities "were separate and apart from the Glaston *American* entities." *Id.* (emphasis added). The Glaston appellees contend that, for purposes of establishing general personal jurisdiction in this case,

[w]hile the Glaston American entities may have contacts with Pennsylvania, those contacts are inconsequential to the determination of whether the Glaston Finnish entities have sufficient contacts in Pennsylvania. [The decedent] was working for the Glaston Finnish entities at the time of his accident, and there is no evidence of record to establish that the business of the Glaston American entities are *[sic]* in any way intertwined with, or related to, the business of the Glaston Finnish [entities].

*Id.* at 3.

In response to the Glaston appellees' claim in this regard, Sulkava points out that she alleged in her Complaint that both the Glaston Finnish entities *and the Glaston American entities* are successors-in-interest to Uniglass. *See* Reply Brief for Appellant at 5; *see also* Complaint, 8/10/10, at ¶¶ 4–7. According to Sulkava, "[t]he Glaston [a]ppellees have, in all respects, failed to refute the allegation that Glaston Finland Oy, [and the Glaston American entities,] are successors-in-interest to Uniglass[.] Sulkava's allegations, taken as true pursuant to Pennsylvania case law, vest jurisdiction in Pennsylvania...." Reply Brief for Appellant at 5.

As stated above, the Glaston appellees do not contest that general personal jurisdiction in Pennsylvania exists as to the

Glaston American entities. Further, it is undisputed that Sulkava alleged in her Complaint that the Glaston American entities are successors-in-interest to Uniglass.

 Our standard of review "mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the appellants' complaint and all reasonable inferences which may be drawn from those facts." *Stoloff v. Neiman Marcus Group, Inc.*, 24 A.3d 366, 369 (Pa.Super.2011) (citation omitted); *see also Schiavone*, 41 A.3d at 865 (stating that "when deciding a motion to dismiss for lack of personal jurisdiction[,] the court must consider the evidence in the light most favorable to the non-moving party."). Further, "[w]hen sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained *only where the case is free and clear of doubt....*" *Haas*, 952 A.2d at 691 (emphasis added, citation omitted).

Our review of the record confirms Sulkava's assertion that the "Glaston[appellees'] corporate structure [ ] is complex and convoluted." Brief for Appellant at xv. Indeed, it appears that additional discovery may be necessary to determine the interrelation, if any, between Uniglass, the Glaston American entities, and the Glaston Finnish entities. Based upon the record before us, and mindful of our standard of review, we are unable to conclude, beyond a doubt, that the trial court lacked general personal jurisdiction over the Glaston appellees.[5] *See Haas*, 952 A.2d at 691; *see also Stoloff*, 24 A.3d at 369.

Since we conclude that the trial court erred in granting the Glaston appellees' PO's and dismissing Sulkava's Complaint against those entities for lack of jurisdiction, we need not address Sulkava's third issue on appeal, pertaining to venue. Accordingly, we reverse the Orders on appeal and remand the matter to the trial court for further proceedings.

Orders reversed; case remanded for further proceedings consistent with this Opinion; Motion to quash denied.

---

5. We note that the trial court issued a very brief Opinion that included little substantive analysis in support of its determination that it lacked general personal jurisdiction over the Glaston appellees and RIG. *See* Trial Court Opinion, 12/16/11, at 2–3 (unnumbered). Indeed, the trial court never mentioned or discussed the amount of general business that the Appellees carried on within this Commonwealth, and the court cited to only one case, which concerned whether the trial court had *specific* jurisdiction over a nonresident corporation. *See id.* at 3 (unnumbered) (citing *Hall–Woolford Tank Co. v. R.F. Kilns, Inc.*, 698 A.2d 80 (Pa.Super.1997)).