J-A08043-19

2019 PA Super 266

| | | |
|---|---|---|
| DELTA HEALTH TECHNOLOGIES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COMPANIONS AND HOMEMAKERS, INC. | : | |
| | : | No. 1495 WDA 2018 |
| Appellant | : | |

Appeal from the Order Entered September 17, 2018
In the Court of Common Pleas of Blair County Civil Division at No(s):
2016 GN 2734

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.: **FILED AUGUST 30, 2019**

Appellant Companions and Homemakers, Inc. ("Companions") appeals from the order overruling Companions' Preliminary Objections to Appellee Delta Health Technologies, LLC's ("Delta") Complaint, seeking dismissal for lack of personal jurisdiction. We affirm.

The facts alleged in the pleadings are as follows. Delta is a Pennsylvania limited liability company with a place of business located in Altoona, Pennsylvania. Complaint, at ¶ 1. Delta is engaged in the business of developing, licensing, and servicing software for the home health, hospice, and private duty agencies in the United States and Canada. *Id.* at ¶ 3. Companions is a Connecticut corporation with a place of business in Farmington, Connecticut. *Id.* at ¶ 2. Companions provides home care services and care management services to members of the public. *Id.* at ¶ 8.

Among Delta's products and services is "AppointMate," which is scheduling, billing, and payroll software for private agencies that provide in-home services for their clients. *Id.* at ¶¶ 4-5. AppointMate is provided to Delta's customers on a "software-as-a-service" basis, whereby the software is owned and operated by Delta and Delta's customers can access AppointMate from remote locations via the Internet on a subscription basis. *Id.* at ¶ 6. There is no software licensed or delivered to Delta's customers. *Id.* In addition, the AppointMate software cannot be modified by customers. *Id.*

The parties' relationship began in 2011 when Delta and Companions began discussions about Companions' search for a new computerized scheduling system. *Id.* at ¶ 12. Negotiations between the parties continued until October 2013, and included Delta providing Companions with a "test account" to access AppointMate and demonstrating AppointMate to Companions. *Id.* at ¶¶ 15, 17, 20. Companions' access to the test account continued uninterrupted from July 2011 until mid-2012, during which time Companions loaded its own data into the test account, which was maintained in Pennsylvania by Delta, for purposes of testing the features and functions of AppointMate. *Id.* at ¶ 18. In October 2013, Companions informed Delta that it was terminating their negotiations. *Id.* at ¶ 21. However, in October 2014, Companions contacted Delta to re-start negotiations about becoming an AppointMate customer. *Id.* at ¶ 22.

On April 10, 2015, the parties executed a written agreement (the "Agreement"), whereby Delta provided Companions with a subscription to

AppointMate. *Id.* at ¶¶ 24-25. The Agreement also provided that Delta would create certain programming changes (the "Enhancements") to modify AppointMate to meet Companions' requirements. *Id.* at ¶ 25. The Agreement stated that the parties would work together after the execution of the Agreement to finalize the specifications for the Enhancements and that Companions would pay for the Enhancements on a time and materials basis. *Id.* The contract provided for a duration of three and a half years but Companions was free to terminate the agreement without cause within the initial six-month period. *Id.*; Agreement, at ¶ 2. The Agreement also stated that the laws of the state of Connecticut would govern the terms of the contract. Agreement, at ¶ 16.5.

After the Agreement was made, between April 10, 2015 and July 21, 2015, both parties dedicated considerable resources, time, and effort via telephone, email, and several in-person meetings to define Companions' specific requirements for the Enhancements. Complaint, at ¶ 27. Delta then performed professional services to develop the Enhancements for Companions at its place of business in Altoona, Pennsylvania. *Id.* at ¶ 30. According to the Complaint, Delta did almost all of the work it performed on the Enhancements in Altoona, Pennsylvania. *Id.* at ¶ 44. Further, the Enhancements were loaded onto computer servers at data centers in Pittsburgh, Pennsylvania and Columbus, Ohio, and Delta operated them from its headquarters in Blair County, Pennsylvania. *Id.*

Delta sent invoices to Companions on September 9 and December 7, 2015 for the work it had done to develop the Enhancements. *Id.* at ¶¶ 31, 39. Companions notified Delta on November 30, 2015, that it was exercising its option to early termination of the Agreement. *Id.* at ¶ 37. Delta alleges that Companions failed to pay the invoices of September 9 and December 7, 2015, in the total amount of $47,536.33. *Id.* at ¶¶ 35, 43, 46.

Delta brought the instant breach of contract action against Companions on September 6, 2016 for failure to pay for work that it performed before the Agreement's termination. Companions filed Preliminary Objections seeking dismissal for lack personal jurisdiction.[1] At oral argument on the Preliminary Objections, the trial court asked counsel if they wanted to take discovery on the issue of personal jurisdiction. Counsel for Companions responded by saying that he believed that the court could make a decision on the Preliminary Objections without the taking of evidence, and could do so based solely on the face of the pleadings and the fact that Companions is located in Connecticut. N.T., 5/23/17, at 3-4. The trial court also inquired whether representatives from Companions came to Pennsylvania. Counsel for Companions conceded that Delta's Complaint averred that Companions' representatives came to Pennsylvania, and agreed that the court must accept that fact as true, if it ruled based on the pleadings. *Id.* at 13-14.

---

[1] Companions' Preliminary Objections also argued that the Agreement was subject to an alternative dispute resolution clause. By order dated September 17, 2018, the trial court deemed this issue moot after the parties underwent an unsuccessful court-ordered mediation.

On August 18, 2017, the court overruled the Preliminary Objections and issued an opinion. Companions then filed a Motion for Reconsideration or in the alternative, Motion to Certify for Immediate Appeal. The court denied the Motion for Reconsideration but allowed Companions to take an appeal as of right pursuant to Pennsylvania Rule of Appellate Procedure 311(b)(2), stating in its order that the Preliminary Objections raised a substantial issue of jurisdiction.[2] Companions then filed the instant appeal, raising the following issue:

> Whether the trial court erred by overruling Defendant Companions and Homemakers, Inc.'s Preliminary Objections and finding that sufficient contacts existed for the trial court to exercise jurisdiction over Companions and Homemakers, Inc., a Connecticut corporation which provides homecare services solely to Connecticut residents in the state of Connecticut.

Companions' Br. at 2.

Companions argues that the trial court erred in finding that it had personal jurisdiction over it. Companions contends that it is a Connecticut corporation that provides in-home care to Connecticut residents in the state of Connecticut. It argues that it owns no property in Pennsylvania, has no offices or employees in Pennsylvania, does not pay taxes in Pennsylvania, and

---

[2] Pennsylvania Rule of Appellate Procedure 311(b)(2) states: "An appeal may be taken as of right from an order in a civil action or proceeding sustaining the venue of the matter or jurisdiction over the person or over real or personal property if…the court states in the order that a substantial issue of venue or jurisdiction is presented."

has no customers in Pennsylvania. Companions further asserts that it is registered to do business in Connecticut only and the Agreement between the parties related solely to the software program that was to be used entirely within the state of Connecticut to serve the needs of Connecticut residents. Companions additionally contends that at no time did it purposefully avail itself to the privileges of conducting business within the state of Pennsylvania. Further, Companions asserts that the Agreement's choice of law clause – that the Agreement was to be construed under the laws of the state of Connecticut – clearly was indicative of where the substance of the Agreement was to occur.

Delta responds that the software accessed by Companions is located in Pennsylvania and stored and operated on computers in Pennsylvania. It contends that access to that software could only be obtained by buying a subscription from Delta and that only those businesses that had a subscription with Delta could access their own data. Delta further argues that Companions loaded its own data into its test account where it was processed in Pennsylvania, and the results were stored in Pennsylvania. Delta asserts that the contract's billable professional services were performed by Delta in Pennsylvania. In addition, Delta argues there were extensive contacts and negotiations leading up to the execution of the Agreement, including by telephone, email, and in-person meetings in Pennsylvania. Delta maintains that it and Companions were two sophisticated businesses going through a very detailed contract. Delta asserts that based on all of the significant contacts between Companions and Pennsylvania between 2011 until 2015,

Companions could have reasonably anticipated being called into Pennsylvania to defend against harms it may have caused to Delta. Moreover, Delta contends the Agreement contemplated that Delta would provide software and services to Companions in Pennsylvania for a term of months and possibly years, so this was a relationship intended to be ongoing in the future and not a one-shot deal.

Our standard of review in an appeal from an order overruling preliminary objections based on personal jurisdiction is as follows:

> When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt.... Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party.

*N.T. ex rel. K.R.T. v. F.F.*, 118 A.3d 1130, 1134 (Pa.Super. 2015) (quoting *Gaboury v. Gaboury*, 988 A.2d 672, 675 (Pa.Super. 2009)). In order to evaluate the sufficiency of the facts averred, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto. *Haas v. Four Seasons Campground, Inc.*, 952 A.2d 688, 691 (Pa.Super. 2008). "Generally, when considering preliminary objections, a trial court is required to admit as true all material facts set forth in the pleadings as well as all inferences reasonably deducible therefrom." *Calabro v. Socolofsky*, 206 A.3d 501, 507 (Pa.Super. 2019). Further, this Court will only reverse the trial court's decision regarding preliminary objections "where

there has been an error of law or an abuse of discretion." ***Gaboury***, 988 A.2d at 675. Additionally, "the burden of proof initially rests upon the party contesting jurisdiction; once that party has provided proof, the burden then shifts to the non-moving party to adduce evidence demonstrating there is a basis for asserting jurisdiction over the moving party." ***Haas***, 952 A.2d at 691. Moreover, "[c]ourts must resolve the question of personal jurisdiction based on the circumstances of each particular case." ***Gaboury***, 988 A.2d at 675 (citing ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462 (1985)).

There are two types of personal jurisdiction: general and specific. ***Mar-Eco, Inc. v. T & R & Sons Towing & Recovery, Inc.***, 837 A.2d 512, 515 (Pa.Super. 2003). General jurisdiction "is founded upon a defendant's general activities within the forum as evidenced by continuous and systematic contacts with the state." ***Id.*** (quoting ***Taylor v. Fedra Int'l, Ltd.***, 828 A.2d 378, 381 (Pa.Super. 2003)). Specific jurisdiction, which is at issue here, "has a more defined scope and is focused upon the particular acts of the defendant that gave rise to the underlying cause of action." ***Id.*** (quoting ***Taylor***, 828 A.2d at 381).

Whether a state may exercise personal jurisdiction over a non-resident defendant is tested against both the state's long-arm statute and the Fourteenth Amendment's Due Process Clause. ***Kubik v. Letteri***, 614 A.2d 1110, 1112 (Pa. 1992). Under Pennsylvania's long-arm statute, courts are permitted to exercise personal jurisdiction over a nonresident defendant "to the fullest extent allowed under the Constitution of the United States and may

be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). Due process "is satisfied when the defendant has (1) purposefully established minimum contacts with the forum state, (2) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Schiavone v. Aveta*, 41 A.3d 861, 869 (Pa.Super. 2012). A defendant purposefully establishes minimum contacts where its

> contacts with the forum state [are] such that the defendant could reasonably anticipate being called to defend itself in the forum. . .Random, fortuitous, and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such that it should be subjected to the forum state's laws and regulations.

*Id.* (citing *Aventis Pasteur, Inc. v. Alden Surgical Co., Inc.,* 848 A.2d 996, 1000 (Pa.Super. 2004)).

In the instant case, Companions knowingly entered into a contract with Delta, a Pennsylvania company. This alone does not establish personal jurisdiction over Companions in Pennsylvania. "It is well settled that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum." *Hall-Woolford Tank Co., Inc. v. R.F. Kilns, Inc.*, 698 A.2d 80, 83 (Pa.Super. 1997) (emphasis in original; citations omitted). "Rather, the totality of the

parties' dealings, including the contract negotiations, contemplated future consequences of the contract, and actual course of dealing must be evaluated in order to determine whether the foreign defendant is subject to suit in the plaintiff's chosen forum." *Id.*

However, the Complaint here includes significant, additional allegations of Companions' activities in Pennsylvania. Since Companions contends that the issue of personal jurisdiction may be determined solely based on the face of the pleadings, we treat all of the factual averments of the Complaint as true. The Complaint details extensive negotiations between the parties extending from 2011 to 2015, including numerous phone calls, emails, and in-person meetings, some of which occurred in Pennsylvania. Importantly, Companions concedes that representatives from Companions came to Pennsylvania during the ongoing negotiations between the parties. Further, after negotiations ceased in 2013, it was Companions who contacted Delta in Pennsylvania to re-start discussions in October 2014 about becoming an AppointMate customer. There were multiple contacts between Delta and Companions in Pennsylvania and the entire point of the subscription service was Companions' repeated access to software residing on computers in Pennsylvania. During the test account period, Companions had uninterrupted access to AppointMate and repeatedly loaded its own data into the test account, which was maintained in Pennsylvania.

Essentially, Companions purposefully availed itself of Delta's services and computers in Pennsylvania so that it could benefit by better scheduling

appointments with its clients. Although it was undisputed that the contract was rightfully terminated within the initial six-month period, the contract contemplated "future consequences" in Pennsylvania, in that it included a possible three additional years of information being sent into Pennsylvania to be processed. None of these contacts were random, fortuitous, or attenuated. Thus, these series of contacts meant that Companions purposefully availed itself of the benefits of Pennsylvania such that personal jurisdiction is proper.

Further, it is well-established that "an Internet presence alone is insufficient to establish either general or specific personal jurisdiction." **Moyer v. Teledyne Cont'l Motors, Inc.**, 979 A.2d 336, 349 (Pa.Super. 2009) (*en banc*). However, in **Efford v. Jockey Club**, 796 A.2d 370, 374 (Pa.Super. 2002), we established a "sliding scale" test of jurisdiction based on the degree and type of interactivity on websites. In adopting this test from the United States District Court for the Western District of Pennsylvania case of **Zippo Mfg. Co. v. Zippo Dot Com, Inc.**, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997), we stated:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is

- 11 -

accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Efford*, 796 A.2d at 374 (internal citations omitted).

Here, the trial court was correct that the sliding scale test that we introduced in *Efford* is not directly applicable to the present case. The sliding scale test is generally used where a foreign defendant maintains a website that a domestic plaintiff in Pennsylvania accesses. The trial court recognized that this case is the inverse of *Efford*, namely that Delta maintains the website, not Companions.

Nonetheless, *Efford* provides guidance. Delta's business is a commercial website for businesses and only those businesses that have a subscription to AppointMate have access to their own data. In other words, it is a restrictive site that requires a password for its use. Although Companions was not the party creating the website, this case is akin to situations where a defendant clearly does business over the Internet and "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Efford*, 796 A.2d at 374. Thus, we find that personal jurisdiction over Companions in Pennsylvania is proper.

Lastly, Companions incorrectly asserts that the Agreement's choice of law clause was a clear indication of where the substance of the Agreement was to occur. It is well-established that "a 'choice of law' provision is not conclusive in deciding the issue of personal jurisdiction in a multi-state dispute." **Bancorp Group, Inc. v. Pirgos, Inc.**, 744 A.2d 791, 793 (Pa.Super. 2000). As the United States Supreme Court explained, a choice of law clause, by itself, does not establish personal jurisdiction in the state whose law the contract chooses:

> [C]hoice of law analysis - which focuses on all elements of a transaction, and not simply on the defendant's conduct - is distinct from minimum contacts jurisdictional analysis - which focuses at the threshold solely on the defendant's purposeful connection to the forum. . . . [S]uch a provision standing alone would be insufficient to confer jurisdiction.

**Id.** (citing **Burger King,** 471 U.S. at 481–82). Accordingly, Companions' argument is without merit.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/30/2019

- 13 -